CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 29 2005

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| LETHA HOLLAND, | ) | Civil Action No. 7:04CV00246 |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| COLE NATIONAL CORP., *et al.*, | ) | |
| Defendant. | ) | By: James C. Turk<br>Senior United States District Judge |

The plaintiff, Letha Holland, ("Holland" or "plaintiff"), through counsel, filed this action against Cole National Corporation ("Cole National"), Cole National Group, Incorporated ("CNG") and Cole Vision Corporation ("Cole Vision") (collectively "defendants"). Cole Vision owns and operates the "Sears Optical" store located in Roanoke, Virginia. The plaintiff has brought this action pursuant to the federal Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, and the common law fraud. This case is before the Court on the plaintiff's objections to the presiding Magistrate Judge's Report and Recommendation. The Magistrate Judge recommended that this Court grant the defendants' motion to dismiss. The defendants have responded and neither party has requested a hearing on the matter making the case ripe for decision. After conducting a *de novo* review of the record, and for the following reasons, the Magistrate Judge's Report and Recommendation will be adopted.

I.

The facts of this case, as alleged in plaintiff's Amended Complaint, are simple. On April

30, 2004, plaintiff responded to a coupon and sale advertisement for Sears Optical promising 50% off of a "complete pair of eyeglasses." The advertisement stated that the sale price included frames and lenses. Plaintiff picked out frames with a cost of approximately $129, excluding the cost of the lenses. The salesperson then rang up the amount due for both the frames and the lenses to be $269.49. Plaintiff alleges that at least $35 of this price was a concealed extra charge for a warranty and lens care kit. At no time was the amount charged itemized in any way, either orally or in writing. Plaintiff alleges that had she known about the extra $35 charge, she would not have paid it or the $269.49. Plaintiff alleges in her Amended Complaint that five other "class members" were similarly defrauded into paying the extra $35 warranty and lens care kit charge.

The plaintiff alleges that this $35 charge was part of a "nationwide, internal policy requiring and encouraging all employees and managers to charge the customers and sell the eyeglasses in a manner that prevented - and in fact avoided and concealed - any notice to the customer of the additional charges for the extended warranty and kit." Am. Compl. ¶ 7. Plaintiff alleges four causes of action in her Amended Complaint. The first two causes of action allege violations under RICO, the third alleges violations under the Magnusson-Moss Warranty Act and the final cause of action alleges that defendants engaged in common law fraud and fraudulent inducement. Without the RICO claims, the parties agree, the additional claims in the Amended Complaint are not sufficient to support federal subject matter jurisdiction.[1]

In his Report and Recommendation, the Magistrate Judge concluded that the Amended

---

[1] While the Magnusson-Moss Warranty Act is a federal statute, there is no dispute that the claim raised in this suit does not meet the threshold jurisdictional requirement for bringing a Magnusson-Moss Warranty Act claim in federal court. The subsection of the Act providing for private causes of action states that no claim shall be cognizable if the amount in controversy is less than $50,000. 15 U.S.C. § 2310(d).

2

Complaint does not state a claim under RICO and, therefore, this Court lacks subject matter jurisdiction over the plaintiff's remaining claims. The Magistrate Judge held that the conduct in this case, as alleged, did not constitute a "pattern of racketeering activity." Rep. & Rec. at 10-20. In so concluding, the Magistrate Judge held that "this case does not present the sort of 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'" Rep. & Rec. at 18, citing *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). Moreover, the Magistrate Judge concluded that the Amended Complaint alleges only one overall scheme of a limited duration. Finally, the Magistrate Judge held that the facts alleged as to Count II did not support the element of "operation or management" of the Sears enterprise required under 18 U.S.C. § 1962(c). *Id.* at 20-25.

## II.

In reviewing the plaintiff's objections to the Magistrate Judge's Report and Recommendation, this Court applies a *de novo* standard of review. 28 U.S.C. § 636(b)(1)(c); *see United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). In this case, the defendants have filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, the Court must take all allegations in the Amended Complaint as true and draw all reasonable inferences in the plaintiff's favor. *DeSole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). The defendants motion should be granted only if it appears that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Id.*

## III.

Plaintiff objects to the Magistrate Judge's ruling that plaintiff has failed to sufficiently plead Counts I and II under RICO. Plaintiff first contends that the Magistrate Judge erred in

3

concluding that the plaintiff had not sufficiently alleged a pattern of racketeering activity. Specifically, plaintiff argues that the predicate acts, as alleged, are of a sufficient "criminal dimension and degree." In support of this argument, plaintiff directs the Court to *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 231 (1989) in which the Supreme Court held that RICO's pattern concept does not contain an organized crime limitation. Plaintiff argues that the Magistrate Judge also erred by concluding *sua sponte* that "the operative predicate acts were not the fraudulent schemes as to each victim, but rather the advertisements were used as part of the general schemes." Pl. Obj. at 6. Finally, plaintiff objections to the Magistrate Judge's conclusion that the alleged scheme was of a limited duration, thereby failing the continuity element of RICO's pattern requirement.

As plaintiff correctly points out, there is not an "organized crime" element to RICO's pattern requirement. The Magistrate Judge, however, did not suggest in his opinion that plaintiff's claims failed because there was no "organized crime" element to her allegations. What the Magistrate Judge did say, and what is evident from the extant case law, is that RICO liability is reserved for "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3 225, 238 (4th Cir. 2000) (internal citations and quotations omitted). The activity must lie "outside the heartland of fraud cases in order to warrant RICO treatment." *Id.*

Accepting plaintiff's allegations as true, the Amended Complaint certainly states a claim for fraud. Not all fraud, even commercial fraud, however, translates into a RICO violation. *See HMK Corp. v. Walsey*, 828 F.2d 1071, 1076 (4th 1987); *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988). Indeed, the Fourth Circuit continues to be cautious in its approach

4

to RICO claims, recognizing a distinction between garden-variety fraud and the more serious violations that pose a special threat to the social well-being. *See Al-Abood*, 217 F.3d at 238.

The defendants' actions, as alleged, do not threaten the social well-being such that RICO treatment is warranted. As the defendants point out, the allegations are concerned with the scope of a merchant's disclosure obligations when it offers a package sale in connection with some other offer. There is no dispute that plaintiff paid for and received a lens care kit and warranty with her requested eyeglasses. There is not even an allegation that the lens care kit and warranty was not worth the $35. Rather, the allegations accuse defendants of failing to inform customers that they were being charged the $35. While not admirable, these actions certainly do not pose the kind of threat to society required for a RICO violation. *Cf., Eplus Technology, Inc. v. Aboud*, 313 F.3d 166, 181, n.15 (4th Cir. 2002) (finding that a "bust out scheme" wherein the RICO violator defrauded more than fifty creditors by obtaining credit for millions of dollars with no intent to repay was not run-of-the-mill fraud); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 725 (7th Cir. 1998) (holding that a RICO violation existed where defendants attempted to pass off tap water as a health supplement); *Thomas v. Ross & Hardies*, 9 F.Supp.2d 547, 553-54 (D. Md. 1998) (holding that a RICO violation existed where defendants took money from homeowners promising to pay off their mortgages, but pocketed it instead).

Next, the Magistrate Judge did not err in finding that the advertisements were neither varied nor numerous, but instead comprised a single scheme. The Magistrate Judge based his decision on the Fourth Circuit's treatment of predicate acts in *American Chiropractic Association v. Trigon Healthcare, Inc.*, 367 F.3d 212 (4th Cir. 2004). In *American Chiropractic*, the plaintiffs alleged that many chiropractors were injured by the defendants failure to reimburse

5

them in accordance with a Provider Agreement. *Id.* The Fourth Circuit, however, found that the claim of extortion constituted only one predicate act, rather than consider each instance of reduced reimbursement to be a separate predicate act. *Id.*

After an independent review of the Amended Complaint and Fourth Circuit case law, the Court concurs in the Magistrate Judge's conclusion that this case involves only a single scheme whereby customers are lured by the promise of half price glasses without knowing that there was a hidden $35 charge. As the Magistrate Judge concluded, the fraud alleged in the Amended Complaint is found in the text of the advertisements. There is no separate predicate act each time a pair of eyeglasses is sold. *See American Chiropractic*, 367 F.3d at 235.

Neither did the Magistrate Judge err by making this ruling *sua sponte*, as plaintiff suggests. *See e.g. Weeks v. Angelone*, 4 F.Supp.2d 497, 513 n.16 (E.D. Va. 1998) (reviewing on the merits a claim raised *sua sponte* by the magistrate judge). Moreover, defendants argued before the Magistrate Judge that plaintiff had not sufficiently plead the pattern requirement found in RICO in that the alleged racketeering activity lacks a scope and persistence that poses a threat to the social well-being. *See* Dft.'s Memo. in Support of Mt. to Dismiss at 6 (citing *Bradenburg*, 859 F.2d at 1185). Accordingly, plaintiff's objection to the Magistrate Judge's *sua sponte* conclusion must fail.

Finally, the Magistrate Judge did not err in concluding that the plaintiff did not allege the type of "prolonged criminal endeavor" necessary to meet the continuity element of RICO's pattern requirement, despite plaintiff's argument that these schemes are in constant rotation and that this rotation is an ongoing racketeering pattern. *See* Am. Compl. ¶¶ 4, 85. While plaintiff has alleged, upon information and belief, that defendants have been engaged in such a scheme for

6

the last ten years, there is no specific factual allegations of such actions. Moreover, even if plaintiff's allegations in this regard were sufficient, as stated above, the alleged predicate acts of the defendants are not of the "criminal dimension and degree" required for a RICO violation.

Finally, plaintiff objects to the Magistrate Judge's ruling that she did not sufficiently allege the "operation or management" element of RICO, 18 U.S.C. § 1962(c), in Count II. Plaintiff states that she has alleged that by carrying out the fraudulent sale of eyeglasses, Cole's racketeering activity implicates and mobilizes Sears and Sears' employees because each fraudulent sale creates obligations for Sears. Pl. Obj. at 14. Plaintiff argues that because Cole Vision operates entirely under the Sears name, and Sears maintains a "money-back guarantee," Sears and its customer service personnel are forced to address negative consequences of a customer dissatisfied with the fraud itself or asserting the guarantee. Pl. Obj. at 15.

Count II, of the Amended Complaint, brought under 18 U.S.C. § 1962(c) concerns infiltration of a legitimate business, Sears, through the mail and wire fraud of Cole Vision. Section 1962(c) provides that, "[i]t shall be unlawful for any person . . . associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(a)-(c) . The Magistrate Judge concluded that "nothing that Cole Vision did affected the operation and management of Sears, or put another way, caused it to make any business decisions in any respect." Rep. & Rec. at 23.

The Court finds the Magistrate Judge's reasoning in concluding that defendants did not affect the operation or management Sears to be sound. Even if plaintiff could properly allege this element, however, it is still necessary that a pattern of racketeering activity exist in order for

7

plaintiff to state a claim under Count II. As determined above, plaintiff has failed to sufficiently plead a pattern of racketeering activity. Accordingly, Count II must be dismiss.

After a *de novo* review of the case, the Court concludes that plaintiff cannot prove any set of facts that would entitle her to relief under RICO. As plaintiff cannot state a claim pursuant to RICO, this Court lacks subject matter jurisdiction over plaintiff's remaining claims, and defendants' motion to dismiss must be granted. An appropriate order shall this day issue.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

ENTER: This 28th day of July, 2005.

*James C. Turk*
Senior United States District Judge